217 So.2d 281 (1968)
Mrs. Edith Meaders BRIDGES
v.
William Parham BRIDGES, Jr.
No. 45054.
Supreme Court of Mississippi.
December 16, 1968.
Rehearing Denied January 15, 1969.
O.B. Triplett, Jr., Forest, Bernard W.N. Chill, Jackson, for appellant.
John R. Countiss, III, W.E. Gore, Jr., Jackson, for appellee.
GILLESPIE, Presiding Justice:
The question in this case is a novel one in this jurisdiction. It is: Where a wife who is drawing alimony from her divorced husband enters into a second marriage which is voidable because of fraud, and the second marriage is annulled, may she draw alimony from the first husband after the annulment of the second marriage? We hold that she may not; when she entered into the second marriage she made an election as to whom she would look for support.
On October 14, 1963, Mrs. Edith Meadows Bridges, hereinafter called appellant, was divorced from William Parham Bridges, Jr., by decree of the Chancery Court of Hinds County, Mississippi. She was awarded the permanent custody of two children, together with child support and alimony. On May 14, 1965, appellant entered into a ceremonial marriage with one Russell E. Ferrell in Hinds County, Mississippi, and moved with him to Texas. The marriage to Ferrell was annulled on June 22, 1965, by a decree of the District Court of Harris County, Texas, on the ground that the marriage was entered into by the appellant under false and fraudulent representations on the part of Ferrell. The decree in that case recited that the purported marriage between the parties "was *282 dissolved, annulled, set aside, and held for naught, because said marriage was entered into by plaintiff under false and fraudulent representations on the part of defendant."
In her suit for annulment in the Texas court appellant charged that Ferrell falsely represented (1) that he had a home in Texas where he and appellant would live, (2) that he would do certain things for appellant's children, (3) his income and his ability to provide a high standard of living. She charged that but for these false representations she would not have married Ferrell and was therefore defrauded into marrying him. She also charged that Ferrell married in violation of a Texas statute that prevented him from remarrying after his former divorce until a certain date.
Under the laws of Texas there is no provision for alimony in the event a marriage is annulled. We are of the opinion that the marriage of appellant to Ferrell was voidable rather than void.
After the divorce of appellant and William Parham Bridges, Jr., Bridges remarried and has since had a child by his second marriage. This occurred long prior to appellant's ceremonial marriage to Ferrell. Bridges was at the time of his divorce from appellant on Oct. 14, 1963, a man of considerable wealth and his wealth has increased each year since his divorce from appellant.
On February 24, 1966, William Parham Bridges, Jr., filed a petition in the Chancery Court of the First Judicial District of Hinds County, Mississippi, seeking a modification of the divorce decree between Bridges and appellant dated October 14, 1963. He contended that the remarriage of appellant to Ferrell on May 14, 1965, was such a change of circumstances that he was forever thereafter relieved of any obligation to pay appellant alimony. In answer to this petition, appellant alleged that her marriage to Ferrell had been annulled as above stated, and charged that she had been inadequately represented in her original suit against Bridges for a divorce that resulted in the decree of October 14, 1963, and that she should continue to be able to draw alimony notwithstanding the pretended marriage to Ferrell. There were certain other aspects of her counter-petition with reference to child support which are not here at issue.
The Court has carefully considered cases from other jurisdictions on the question involved in this case.
In the case of Sleicher v. Sleicher, 251 N.Y. 366, 167 N.E. 501 (1929), the parties were married in New York and divorced in Nevada, the decree of divorce providing for alimony. The divorced wife subsequently went through a marriage ceremony which was later annulled on the grounds of fraud. The divorced wife then brought an action against the former husband contending that her right to receive alimony under the divorce decree was revived upon the annulment of her marriage. It was held that upon the annulment being granted, the rights of the divorced wife were revived as to alimony under the divorce decree.
In the case of Gaines v. Jacobsen, 308 N.Y. 218, 124 N.E.2d 290, 48 A.L.R.2d 312 (1954), the New York court held that where the divorced wife could sue for support in her action for annulment of the subsequent marriage, the first husband was relieved of any duty to support her.
In Cecil v. Cecil, 11 Utah 2d 155, 356 P.2d 279 (1960), where the wife's purported second marriage had been annulled because she was adjudged to have had insufficient mental capacity to enter into such purported marriage, the court held that the first husband was not entitled to modification of a divorce decree requiring him to pay alimony.
In the case of Robbins v. Robbins, 343 Mass. 247, 178 N.E.2d 281 (1961), the wife was granted an annulment because of misrepresentations of the husband as to age, health, "building a home", and raising a family. In deciding whether the wife's *283 right to alimony was revived, the court held that there should be no hard-and-fast rule, but that the decision should depend on whether the reliance by the divorced first husband upon the validity of the divorced wife's remarriage had caused such a substantial change in circumstances that it would be unjust to revive his obligation to pay alimony upon the annulment of the divorced wife's subsequent marriage.
The ceremony of marriage itself has been held sufficient to deny a revival of alimony from a previous marriage even where the "marriage" created by that ceremony was later held void ab initio. This rule is based upon the premise that the divorced wife upon her remarriage makes an election which relieves the divorced husband from any further duty to support her. The chancellor in reaching his decision in the present case relied primarily on the case of Keeney v. Keeney, 211 La. 585, 30 So.2d 549 (1947). In that case Keeney was ordered to pay his divorced wife the sum of $50 per month as alimony until such time as she remarried. Mrs. Keeney subsequently remarried but this marriage was annulled and found to "be a bigamous marriage, null and void and of no effect." Mrs. Keeney then filed her petition to revive Keeney's obligation to support her. The Supreme Court of Louisiana held that because Article 170 of the Revised Civil Code of Louisiana provided that alimony should be revocable where the wife contracted a second marriage, the husband was discharged by the mere ceremony of marriage, although the pretended marriage was bigamous and thereby void.
Mississippi Code 1942 Annotated, section 2743 (1956) provides that when a divorce shall be decreed from the bonds of matrimony the court may order alimony paid to the wife, and may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require. It makes no provision for alimony to cease on remarriage of the wife. However, in Sides v. Pittman, 167 Miss. 751, 150 So. 211 (1933), this Court said:
"In this case there was a question as to whether a wife divorced from her husband, and who has remarried, is entitled to alimony after her remarriage. In our opinion, when a wife remarries, a new status is created which relieves the former husband from further duty to support her. She, in effect, elects to take support from her second husband, and we do not think the law contemplates that she shall marry again, and then have her former husband support her and relieve her last husband from that duty. * * *" Citing Bowan v. Worthington, 24 Ark. 522; Stillman v. Stillman, 99 Ill. 196, 39 Am.Rep. 21, 26; Morgan v. Lowman, 80 Ill. App. 557, 558. (167 Miss. at 755, 150 So. at 211.)
This Court has not had a case involving a void or voidable second marriage.
We are unwilling to adopt the rule in Keeney, supra, to the effect that every ceremonial second marriage automatically cuts off the wife's rights to alimony from the first husband. We are also unwilling to adopt the rule adhered to in New York and Massachusetts that if a voidable second marriage is annulled and the laws of the state of annulment do not provide for alimony in the case of annulment, the right to alimony from the first husband may be revived unless it would be inequitable under the facts and circumstances. Ordinarily in the case of a voidable marriage, the innocent party may elect to either have the marriage annulled or treated as valid. If appellant had treated the marriage to Ferrell as valid, she would probably have the right to receive alimony from him. She also had the right to have the marriage annulled. This reveals the weakness of the rule applied in New York and Massachusetts.
The duty of the husband to pay, and the right of the wife to receive, alimony should not depend upon whether the divorced wife decides to treat her subsequent marriage as voidable or valid.
*284 Appellant was mentally competent when she undertook to marry Ferrell. She was under no compulsion, except the misrepresentations already mentioned. When she undertook to enter into this marriage she made an election to look to Ferrell as the man from whom she would receive her support, and relinquished her right to receive further alimony from Bridges. If she had been forced to marry Ferrell under duress that made her act wholly involuntary or if she had been mentally incompetent to enter into a contract of marriage, we would have a different kind of case, and undoubtedly would reach a different result. We are of the opinion that the chancellor correctly decided the case and that appellant was not entitled to any further alimony from Bridges after the date of the ceremonial marriage to Ferrell.
Affirmed.
All Justices concur.