425 So.2d 1353 (1983)
Mary Lou Windham BOREN
v.
Bobby N. WINDHAM.
No. 53957.
Supreme Court of Mississippi.
February 2, 1983.
Mounce, Soper & McElroy and Thomas M. McElroy, Tupelo, for appellant.
Langston & Lott and Duncan Lott, Booneville, for appellee.
Before WALKER, DAN M. LEE, and ROBERTSON, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Chancery Court of Prentiss County wherein Bobby N. Windham, appellee, petitioned for modification of a final decree of divorce whereby he sought termination of alimony payable to his former wife Mary Lou Windham Boren, appellant. Windham alleged in his petition a material change in circumstances had occurred subsequent to the rendition of the divorce decree in that Mary Windham Boren had remarried and alternatively, engaged in sexual misconduct, thereby forfeiting her right to future payments of alimony. The proof at trial established that the marriage entered into between Mary Lou *1354 Windham Boren and Jim Boren was void and subsequently annulled as being a bigamous marriage. The chancellor terminated appellant's alimony, finding that she had chosen to look to Jim Boren for her support by marrying him, and upon other grounds as alleged in appellee's petition. Mary Lou Windham Boren appeals. We affirm.
The parties to this appeal were divorced on February 23, 1977. The final decree for divorce provided, among other things, that appellee pay unto appellant alimony in the amount of $75 per week for as long as appellant was able to work on a parttime basis only. In the event appellant's health improved to the extent she was able to resume work on a fulltime basis, the weekly payment of alimony was to be reduced to $40 per week until further order of the court or appellant's remarriage.
Following the divorce, appellant moved to Baldwyn, Mississippi, and obtained parttime employment at Arnold's Restaurant. She worked at Arnold's for approximately three years until she broke her foot. When appellant was ready to return to work, Arnold's did not have an opening to accommodate her. In September or October of 1980, appellant obtained a parttime job at Mr. Quick; however, her employment there ended after approximately one month due to the following circumstances.
In August 1980 appellant met Jim Boren. Four days later appellant and Boren were married in Alabama. Appellant contends the marriage was not consummated, whereupon Boren departed the following day for approximately three months. It was after Boren's departure that appellant became employed at Mr. Quick. While Boren was gone, appellant learned that he was previously married to another woman in Alabama from whom he was not divorced. She began dating a man named Swift. Prior to Boren's return, appellant broke up with Swift; however, when Boren came to see her, Swift also appeared and a fight erupted. Swift then beat appellant and forced her to go to Tennessee where she remained for approximately eight days. A missing person report was filed by appellant's daughter on November 20, 1981.
Upon her return to Mississippi, appellant was hospitalized. When she was released from the hospital, she confronted Boren who had been staying at her house while she was hospitalized, about his other wife in Alabama.
Appellee learned of appellant's ceremonial marriage to Boren in January of 1981, at which time, upon the advice of his attorney, he ceased making alimony payments and instituted the present proceeding. Appellant having lost her job at Mr. Quick, was without funds once the alimony payments were terminated. To help defray expenses, appellant allowed Wallace Keys, a third cousin, to live at her house during January, February and March of 1981. Although Keys paid no rent, he helped buy a few groceries. Both Keys and appellant denied any sexual relationship, asserting they occupied separate bedrooms while he resided at appellant's home. William Myhand also lived in appellant's home for approximately one month. Myhand likewise paid no rent but did contribute for groceries and bills. Appellant denied any sexual relations with Myhand.
At the conclusion of the hearing, the chancellor found that appellant, by marrying Boren, even though such marriage had been annulled, had elected to whom she wished to look for support. The chancellor therefore terminated appellant's alimony.
Where a wife who is drawing alimony from her divorced husband enters into a second marriage which is void, and the second marriage is annulled, may she draw alimony from the first husband after the annulment of the second marriage?
In Bridges v. Bridges, 217 So.2d 281 (Miss. 1968), this Court refused to adopt a rule that every ceremonial second marriage would automatically cut off the wife's right to alimony from her first husband and likewise refused to adopt the rule that if a voidable second marriage is annulled and the laws of the state of annulment do not provide for alimony in the case of annulment, the right to alimony from the first *1355 husband may be revived unless it would be inequitable under the facts and circumstances.
The parties to this appeal contend that this is a case of first impression because Bridges involved a voidable marriage rather than a void marriage. While we have not previously addressed the issue of whether a revival of alimony would occur where a wife's subsequent marriage is void, we decline to differentiate between a void and voidable marriage for this purpose. In Bridges we held:
We are unwilling to adopt the rule in Keeney, supra, to the effect that every ceremonial second marriage automatically cuts off the wife's rights to alimony from the first husband. We are also unwilling to adopt the rule adhered to in New York and Massachusetts that if a voidable second marriage is annulled and the laws of the state of annulment do not provide for alimony in the case of annulment, the right to alimony from the first husband may be revived unless it would be inequitable under the facts and circumstances. Ordinarily in the case of a voidable marriage, the innocent party may elect to either have the marriage annulled or treated as valid. If appellant had treated the marriage to Ferrell as valid, she would probably have the right to receive alimony from him. She also had the right to have the marriage annulled. This reveals the weakness of the rule applied in New York and Massachusetts.
The duty of the husband to pay, and the right of the wife to receive, alimony should not depend upon whether the divorced wife decides to treat her subsequent marriage as voidable or valid.
Appellant was mentally competent when she undertook to marry Ferrell. She was under no compulsion, except the misrepresentations already mentioned. When she undertook to enter into this marriage she made an election to look to Ferrell as the man from whom she would receive her support, and relinquished her right to receive further alimony from Bridges. If she had been forced to marry Ferrell under duress that made her act wholly involuntary or if she had been mentally incompetent to enter into a contract of marriage, we would have a different kind of case, and undoubtedly would reach a different result. We are of the opinion that the chancellor correctly decided the case and that appellant was not entitled to any further alimony from Bridges after the date of the ceremonial marriage to Ferrell. (emphasis ours). (217 So.2d at 283-84).
We see no reason why our holding in Bridges should not be extended to encompass a situation where the subsequent marriage of a wife is void rather than voidable. Regardless of whether the subsequent marriage is void or voidable the revival of alimony from a wife's first husband upon annulment of the second marriage will depend upon the facts and circumstances of each case.
Turning to the facts in the present case, appellant married Boren in August of 1980. Appellant subsequently learned of Boren's previous marriage while he was on a three-month trip which began the day after their marriage. Appellant then began dating Swift. When appellee discovered that appellant had remarried, he instituted the present action for termination of her alimony on January 9, 1981. Appellant did not file suit for annulment until March 13, 1981. Both causes were later heard on the same day. The annulment was heard first and was not contested by Boren.
Alimony is not a bounty to which appellant became entitled to receive indefinitely simply by reason of the fact that at one time she had been married to appellee. Beacham v. Beacham, 383 So.2d 146 (Miss. 1980).
From the totality of the circumstances as evidenced by the record, we cannot say the chancellor was manifestly wrong in terminating appellant's alimony. Appellant was mentally competent when she undertook to marry Boren. She was under no compulsion. When she undertook to enter into this marriage, she made an *1356 election to look to Boren as the man from whom she would receive her support. In Sides v. Pittman, 167 Miss. 751, 150 So. 211 (1933), this Court held:
In this case there was a question as to whether a wife divorced from her husband, and who has remarried, is entitled to alimony after her remarriage. In our opinion, when a wife remarries, a new status is created which relieves the former husband from further duty to support her. She, in effect, elects to take support from her second husband, and we do not think the law contemplates that she shall marry again, and then have her former husband support her and relieve her last husband from that duty. (167 Miss. at 755, 150 So. at 211).
The loss of alimony may give rise to a separate cause of action against Boren for his alleged misrepresentations which caused appellant to forfeit her right to receive alimony.
As stated in Bridges, under a different set of facts and circumstances we may reach a different result. We cannot say, however, that here the chancellor erred in terminating appellant's alimony.
Based on the foregoing, this cause is hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.