HAWTHORNE, Justice.
 

 The single question presented for determination in this cause is whether a bigamous marriage is a marriage within the meaning, intendment, and contemplation of that provision of the Civil Code which recites that the alimony recoverable under such, article shall be “revocable * * * in case the wife should contract a second marriage”. (Article 160.)
 

 The factual situation giving rise to the litigation as disclosed by the record, which includes an agreed stipulation of counsel, is as follows: Plaintiff, Mrs. Virgil 0. (Thelma A.) Keeney, was married to defendant, Virgil O. Keeney, on December 14, 1920. Some 20 years thereafter, on January 9, 1941, she instituted suit against him in the First Judicial District Court of Caddo Parish seeking a decree of separation from bed and board on grounds of abandonment, and an award of . alimony pendente lite of $100 per month. Judgment was rendered on January 23, 1941, in accordance with the prayer of her petition.
 

 After a year had passed, plaintiff, through regular proceedings in the same suit, obtained a judgment dated February 10, 1942, granting to her a decree of divorce, and ordering and commanding defendant to pay to plaintiff the sum of $50 per month “as alimony until such time as she remarries”.
 

 Five days later, on February 15, 1942, pursuant to a marriage license duly issued, one N. S. Allison and plaintiff were pronounced husband and wife in a marriage ceremony performed in Bossier Parish, -Louisiana, by a justice of the peace. When that occurred, Virgil O. Keeney, who had hitherto made all alimony payments due by him, discontinued paying alimony to plaintiff.
 

 ' On November 28, 1944, plaintiff filed suit in the First Judicial District Court of Caddo Parish against N. S. Allison, who was represented by a curator ad hoc, alleging that they had lived together in Caddo- Parish from the date of the mentioned marriage ceremony until January, 1944, at which time they separated and he moved to the State of California; that, when this ceremony was performed, N. S. Allison was mai'ried to one Daisy Eunice Tate, and was still married to her; that plaintiff learned of that fact after separating from N. S. Allison. The court on December 13, 1944, in confirming a preliminary default, rendered judgment decreeing the marriage between Thelma A. Keeney, plaintiff herein,
 
 *590
 
 and N. S. Allison performed on February 15, 1942, in Bossier Parish
 
 “to
 
 be a bigamous marriage, null, void and of no effect”.
 

 On March 28, 1945, plaintiff filed a petition in the cause in which her divorce from defendant was granted, alleging that on February 10, 1942, a judgment was rendered therein against defendant Keeney awarding her permanent alimony in the sum of $50 per month. She further alleged “that said alimony has been paid by the defendant herein or discharged through and including the 10th day of December, 1944, and there is now past due alimony of the sum of One Hundred Fifty ($150.00) Dollars through March 10th, 1945, and the defendant herein has refused to pay same”. She prayed that the clerk of court be ordered to issue a writ of fieri facias in the sum of $150 in execution of the judgment.
 

 The writ issued, and thereunder Harry I. Morgan, employer of defendant, was made garnishee. The garnishee answered the interrogatories propounded to him and acknowledged an indebtedness to defendant. At about the same time defendant filed a motion praying that the writ of fieri facias be recalled, that the garnishment proceedings be dismissed, and that there be judgment in his favor and against plaintiff, decreeing that no- further alimony was due under the terms of the judgment rendered on February 10, 1942. Supporting the prayer was his allegation that the judgment ordered him to pay alimony until plaintiff remarried, and that plaintiff married N. S. Allison on February 15, 1942, at which time defendant discontinued paying alimony to her.
 

 A trial was had on the issues created by the pleadings in the garnishment proceedings, and there was judgment in favor of plaintiff and against the defendant and the garnishee. From this judgment defendant is appealing.
 

 Defendant, in seeking to avoid the payments ordered by the judgment in the divorce proceedings, failed to offer any evidence at the trial to show that alimony is no longer needed by plaintiff. His position herein is merely that the obligation to pay alimony was forever ended when plaintiff participated in the marriage ceremony with N. S. Allison, even though the marriage was invalid. It is his contention that the word “marriage” as used in Article 160 of the Revised Civil Code, in providing that the alimony shall be “revocable * * * in case the wife should contract a second marriage”, refers only to the ceremony of marriage and not to the status or relationship created by it. ’ This interpretation of the word “marriage” in that article, defense counsel argue, is required by: (1) The provisions of the Revised Civil Code and the jurisprudence, and (2) the fact that a contrary conclusion would lead to absurd consequences which would not have been within the intention of the lawmakers.
 

 Plaintiff, on the other hand, contends that the obvious theory of the words “con
 
 *592
 
 tract a second marriage” found in Article 160 is that the first husband’s duty to support his divorced wife may be terminated when a second husband becomes legally bound to support the same wife by virtue of a second valid marriage, and that therefore, in determining whether or not a second marriage, which is void, operates to release the first husband from the obligation to pay alimony, we must determine whether the second marriage gives rise to the obligation of support. Counsel say that, under the well established law of Louisiana, the defense of nullity of the marriage is a valid one in a criminal proceeding against the husband for non-support, and likewise say that under the jurisprudence there is no obligation upon the husband to support the wife of a void marriage after its termination. Counsel urge in conclusion that, since the second marriage in the instant case was a void one and gave rise to no obligation to support, the husband of the first marriage was not released by this second marriage from the obligation to pay the wife alimony.
 

 The pertinent part of Article 160 of the Revised Civil Code, which provides for the payment of alimony to the wife who has obtained a divorce, reads:
 

 “This alimony-shall be revocable in case it should become unnecessary, and
 
 in case the wife should contract a second marriage.”
 
 (Italics ours.)
 

 There certainly is no obligation on the part of Mr. Keeney to support Mrs. Keeney flowing from his marriage with her, since that marriage has been terminated by an absolute divorce, and under our jurisprudence, if she is entitled to support, it is in the nature of a pension — all of which was pointed out in the case of State ex rel. Hill v. Judge of Civil District Court for Parish of Orleans, 114 La. 44, 38 So. 14, 15, as follows: “On the other hand, after the judgment of divorce has been rendered, there can be no reconciliation, reinstating the dissolved marriage. There is no obligation arising from the marriage, as it is forever dissolved. There is an exception for alimony — rather, support— the law accords not alimony, but a pension, to the unfortunate spouse who obtained the divorce. There can be no judgment for support if the plaintiff fails to sustain his demand for divorce.”
 

 In Player v. Player, 162 La. 229, 110 So. 332, 333, this Court said:
 

 “As the marriage is forever dissolved, there is no obligation arising from it. The law accords, not alimony in such a case, but a pension, to the unfortunate spouse who has obtained the divorce. This pension becomes revocable in case it should become unnecessary, and in case the wife should contract a second marriage. * * *
 
 "
 

 Since there is no obligation to support plaintiff, Mrs. Keeney, flowing from the first marriage, and since the alimony awarded to her at the time she was divorced from her first husband is in the nature of
 
 *594
 
 a pension, we are of the opinion that, when she contracted a second marriage with N. S. Allison, she waived or forfeited all of her rights to collect alimony from Virgil O. Keeney, her divorced husband, and, having so forfeited her rights to alimony by entering into a second marriage, she is bound thereby and cannot now be heard to complain.
 

 We are convinced that the lawmakers in drafting Article 160 of the Civil Code intended that the phrase “This alimony shall be revocable * * * in case the wife should contract a second marriage” should refer to the ceremony of marriage and not to the status or relationship created by it. It is true that in this case plaintiff’s bigamous marriage to Allison was an absolute nullity, but, to hold that the word “marriage”, as used in the article of the Code in providing that alimony shall be revocable if the wife should contract a second marriage, means or refers only to a valid second marriage or to the status of marriage, in our opinion, would produce absurd consequences which could not have been within the intention of the drafters of the Code. For example, a wife awarded alimony from her divorced husband could contract a second bigamous marriage in bad faith and at her convenience and pleasure have the second marriage declared a nullity and invalid, and then force her first husband to resume the payment of alimony if she did not have sufficient means for her maintenance. - In the very case here under consideration, although plaintiff did not demand alimony for the period from the celebration of her marriage to N. S. Allison to its annulment, if the argument of plaintiff’s counsel that the first husband is liable for her support because no duty to support flows from the putative marriage is carried to its logical conclusion, she would be entitled to alimony for the period during which she had lived with Allison. Such a conclusion in our opinion would be repugnant to public policy and good morals.
 

 To hold that the divorced husband’s obligation to pay alimony was terminated only by a subsequent valid marriage on the part of the divorced wife, or by the status of the second marriage, would place the divorced husband in the position of not knowing, nor could he know, in such case when his obligation to pay such alimony terminated because it might subsequently be decreed many years later that the wife’s second marriage was invalid. For, in the event the second marriage were invalid, under such holding the first husband could then be required to resume the payment of alimony provided his divorced wife did not have sufficient means for her maintenance.
 

 In such case, even after the wife has remarried, the divorced husband could never know what part of his income would continue to be available to support himself and a second wife, if he should desire, to remarry, and any children born as issue of
 
 *596
 
 the marriage. The very uncertainty of the husband’s position which would result from such a holding would, to say the least, in many cases prove an obstacle to his contracting a second marriage with any other woman. Certainly a holding which thus discourages marriage, the founding of a home,, and the rearing of a family would be contrary to public policy and would strike at the very foundations of our social and economic life.
 

 For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that the writ of fieri facias issued herein be recalled and the garnishment proceeding against Harry I. Morgan be dismissed, and that there be judgment in favor of defendant-appellant, Virgil O. Keeney, and against plaintiff-appellee, Mrs. Virgil O. Keeney, decreeing that no further alimony is due under the terms of the judgment awarding such alimony rendered by the First Judicial District Court on February 10, 1942; appellee to pay all costs of these proceedings.