578 P.2d 1001

**Vernard HODGES, Appellant,**

v.

**Mary E. HODGES, Appellee.**

**No. 2 CA–CIV 2608.**

Court of Appeals of Arizona, Division 2.

Feb. 15, 1978.

Rehearing Denied March 21, 1978.

Review Denied April 18, 1978.

Metcalf & Halladay, P.C. by Michael B. Halladay, Tucson, for appellant.

Michael J. Vingelli, Tucson, Michael F. Rollins, Certified Law Student under Rule 28(e), for appellee.

## OPINION

HATHAWAY, Judge.

The question presented by this appeal is whether the annulment of a later marriage results in the revival of the prior husband's obligation to provide spousal maintenance under a decree of dissolution. Appellee Mary Hodges and appellant Vernard Hodges were married on May 4, 1960, and sixteen years later on April 29, 1976, their marriage was dissolved in Pima County Superior Court. Appellee was awarded custody of their only child, a fourteen year old daughter, and appellant was ordered to pay child support. The decree of dissolution also provided that "Vernard Hodges is ordered to pay as and for spousal maintenance the sum of Two Hundred Twenty Dollars and no/100 ($220.00) per month . . . and continuing until further Order of this Court . . . ."

On August 9, 1976, appellee married John Pfrimmer. Upon her subsequent complaint against Pfrimmer in superior court, however, this marriage was annulled on October 18, 1976. Appellant had made no spousal maintenance payments since July 1976. Following the annulment, appellee requested that he again begin to make payments, but he refused. On January 19, 1977, she filed a petition for an order to show cause re: arrearages, requesting judgment for delinquent spousal maintenance payments and attorney's fees. A hearing was held on the petition and on the cross motions for summary judgment. This appeal challenges the denial of appellant's and the granting of appellee's motion for summary judgment.

The court awarded judgment against appellant in the sum of $1,540.00 for spousal maintenance due from August 1976 through February 1977, and in the sum of $250.00 for attorney's fees. The court found:

". . . no Arizona law which is controlling in this fact situation . . . This court believes that since this is an action in equity, and since there has been no showing made as to why the spousal maintenance payments should be terminated or reduced other than the marriage and subsequent annulment, that the equities are with the petitioner and against the respondent. This holding does not preclude the respondent from moving this court to modify the spousal maintenance provisions in the decree at some subsequent date should there be sufficient change in circumstances as to either party."

A.R.S. § 25–327(B) provides:

"Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

The word "remarriage" is not defined in the statute. We must, therefore, determine whether appellee's marriage to Pfrimmer, later annulled, comes within the meaning of "remarriage" in A.R.S. § 25–

327(B) terminating appellant's obligation to pay spousal maintenance. Appellee contends that "remarriage" is not, as here, a void marriage which may be annulled, but is a valid marriage which gives rise to a status. Appellant's position is that appellee's marriage to Pfrimmer was merely voidable and "remarriage" includes this kind of ceremonial marriage.

A.R.S. § 25–301 sets out the grounds for annulment:

"Superior courts may dissolve a marriage, and may adjudge a marriage to be null and void when the cause alleged constitutes an impediment rendering the marriage void."

The word "void" as used in our annulment statute refers to "voidable" marriages, which are subject to ratification or disaffirmance by the injured party, as well as "void" marriages, which are incapable of ratification. *Southern Pacific Company v. Industrial Commission,* 54 Ariz. 1, 91 P.2d 700 (1939), overruled on other grounds, *Means v. Industrial Commission,* 110 Ariz. 72, 515 P.2d 29 (1973). Any grounds rendering the marriage void or voidable should be available to grant an annulment of marriage under A.R.S. § 25–301. *Means v. Industrial Commission,* supra.

In its decree the court declared appellee's marriage to Pfrimmer ". . . void, and of no force, form or effect whatsoever." Since appellee's complaint for annulment is not included in the record, we do not know what grounds the court had for granting her relief. On this record, we do not conclude, because the court declared the marriage "void" under the annulment statute, that it may not have been referring to a voidable marriage.

It has been stated generally that an annulment decree "relates back" to destroy a marriage from the beginning. This doctrine is a legal fiction fashioned by the

courts to promote justice. *Gaines v. Jacobsen,* 308 N.Y. 218, 124 N.E.2d 290 (1954). If the "relation back" theory is given strict application, as appellee contends it should be, then her marriage to Pfrimmer never existed, she has not remarried as A.R.S. § 25–327(B) contemplates, and she would remain entitled to the maintenance payments provided in the decree of dissolution. However, this theory has not been applied by the courts remorselessly. *Robbins v. Robbins,* 343 Mass. 247, 178 N.E.2d 281 (1961). It is sometimes given effect and sometimes ignored, as the purposes of justice are deemed to require. *Sefton v. Sefton,* 45 Cal.2d 872, 291 P.2d 439 (1955); *Gaines v. Jacobsen,* supra. Courts have been particularly wary of applying the "relation back" fiction where it might adversely affect the rights of innocent third parties. *Berkely v. Berkely,* 269 Cal.App.2d 872, 75 Cal.Rptr. 294 (1969); *Sefton v. Sefton,* supra.

Appellee urges that reference to Arizona law in the area of workmen's compensation supports her position. It has been held that the annulment of a second marriage reinstates a widow's right to death benefits under A.R.S. § 23–1046(A)(2),[1] upon tendering back the amounts she has received as lump settlement. *United States Fidelity and Guaranty Company v. Industrial Commission,* 25 Ariz.App. 244, 542 P.2d 825 (1975); *Means v. Industrial Commission,* supra; *Southern Pacific Company v. Industrial Commission,* supra. Appellee relies on the following interpretation of "marriage" in an Indiana workmen's compensation statute: "Giving the provision referred to a broad and liberal construction, as we must, *a marriage, within the meaning of the statute,* is not a void or voidable marriage which may at once be annulled, but a valid and subsisting marriage." (Emphasis ours) *Eureka Block Coal Co. v. Wells,* 83 Ind.App.

1. "§ 23–1046. Death benefits

A. In case of an injury causing death, the compensation therefor shall be known as a death benefit, and shall be payable in the amount, for the period, and to and for the benefit of the persons following:

\*   \*   \*   \*   \*   \*

2. To the surviving spouse, if there is no child, thirty-five per cent of the average wage of the deceased, to be paid until such spouse's death or remarriage, with two years' compensation in one sum upon remarriage."

181, 147 N.E. 811 at 812 (1925), quoted in *Southern Pacific Company v. Industrial Commission,* supra.

It is axiomatic workmen's compensation law that the statutes are to be liberally construed to effect their purpose of placing the burden of death and injury upon industry. *Coca-Cola Bottling Company of Tucson v. Industrial Commission,* 23 Ariz.App. 496, 534 P.2d 304 (1975); *Pottinger v. Industrial Commission,* 22 Ariz.App. 389, 527 P.2d 1232 (1975). A.R.S. § 23–1046(A)(2) says nothing about any number of economic factors which might be considered, if ability to provide and support were the criteria, but they are not. *United States Fidelity and Guaranty Company v. Industrial Commission,* supra. By contrast, an award of maintenance under A.R.S. § 25–319 may be made only upon a finding that the spouse seeking maintenance lacks sufficient property to provide for his or her reasonable needs and is unable to support himself or herself through appropriate employment or is the custodian of a child who requires his or her presence at home. *Fye v. Zigoures,* 114 Ariz. 579, 562 P.2d 1077 (App.1977).

There is a manifest difference between a spousal maintenance paying former husband and the Industrial Commission administering workmen's compensation law. See *Folsom v. Pearsall,* 245 F.2d 562 (9th Cir. 1957); *Flaxman v. Flaxman,* 57 N.J. 458, 273 A.2d 567 (1971). It is clear that the factors which may lead to a holding that an annulment decree "relates back" to revive a right to death benefits may not be relevant where the issue is whether an annulment decree "relates back" to revive a right to spousal maintenance. See *Nott v. Flemming,* 272 F.2d 380 (2nd Cir. 1959).

The revival of alimony following annulment of a remarriage has been considered in a number of jurisdictions with various results predicated upon differing rationales. Annot., 45 A.L.R.3d 1033 (1972). Some courts have rested their decisions on whether the marriage was void or voidable. Where void remarriages are involved the majority rule is the alimony requirement is not cut off. *De Wall v. Rhoderick,* 258 Iowa 433, 138 N.W.2d 124 (1965); *Johnson County National Bank and Trust Company v. Bach,* 189 Kan. 291, 369 P.2d 231 (1962); *Cecil v. Cecil,* 11 Utah 2d 155, 356 P.2d 279 (1960); *Boiteau v. Boiteau,* 227 Minn. 26, 33 N.W.2d 703 (1948). Many courts have rejected the "relation back" doctrine and deny recovery to the wife when her second marriage is merely voidable. *Flaxman v. Flaxman,* supra; *Chavez v. Chavez,* 82 N.M. 624, 485 P.2d 735 (1971); *Bridges v. Bridges,* 217 So.2d 281 (Miss.1968). Most states do not have a statute, similar to A.R.S. § 25–327(B), providing for termination of maintenance as a matter of law. As a result, decisions from other states are concerned with the effect of the annulled remarriage as a "changed circumstance" between the divorced parties or with the interpretation of an agreement, incorporated in a divorce decree, according to the parties' intentions. These decisions, therefore, are of illustrative value only. See *Berkely v. Berkely,* supra.

A significant minority of courts have abandoned the void-voidable distinction altogether, and refuse the wife recovery, even where her second marriage is void rather than merely voidable, and even in the absence of legislation authorizing an alimony award after a judgment of annulment. Holding that a ceremonial marriage should be deemed sufficient as a matter of law to cut off alimony, these decisions are based both on statutory interpretation, in those jurisdictions where by statute the alimony obligation terminates upon remarriage, *Fry v. Fry,* 5 Cal.App.3d 169, 85 Cal.Rptr. 126 (1970); *Berkely v. Berkely,* supra; *Torgan v. Torgan,* 159 Colo. 93, 410 P.2d 167 (1966); *Keeney v. Keeney,* 211 La. 585, 30 So.2d 549 (1947); and on policy grounds, *Denberg v. Frischman,* 24 A.D.2d 100, 264 N.Y.S.2d 114 (1965), cert. den. 385 U.S. 884, 87 S.Ct. 176, 17 L.Ed.2d 111 (1966).

The following reasons have been advanced for refusing to revive the husband's obligations. The grounds for annulment will likely be known by and be of concern to only the individual parties involved. The wife would thus have the option to annul or

ratify a voidable marriage. The marriage might continue indefinitely. "The former husband's affairs should not be left in limbo subject to the conduct of parties to a relationship of which he has no part." *Flaxman v. Flaxman,* supra, 273 A.2d 567 at 570. Moreover, he would not be a party to any annulment proceedings which did occur. His obligations should not be determined by circumstances over which he has little or no knowledge or control. He is entitled to rely upon his wife's apparent marital status after a new marriage ceremony and thereafter to reorder his personal and financial affairs. *Berkely v. Berkely,* supra; *Keeney v. Keeney,* supra. The freedom from the obligation to pay alimony may lead him to change his mode of living or even to remarry and establish a new family. *Denberg v. Frischman,* supra. If "remarriage" referred only to a valid second marriage, the husband would be placed in the untenable position of never being certain that the financial responsibility for his former wife would not shift back to him. *Flaxman v. Flaxman,* supra; *Keeney v. Keeney,* supra.

■ The wife also has the option, in many cases, of obtaining an annulment or a divorce from the second husband. In Arizona, the fact that a dissolution of marriage could be granted under A.R.S. § 25–312 should not preclude the granting of a valid decree of annulment. *Means v. Industrial Commission,* supra. If alimony could be revived by annulling the second marriage, the wife could choose between two sources of support. A divorce could lead to alimony from the second husband while an annulment could reinstate alimony from the first. Although the former husband is innocent of any wrongdoing, and the wife may be so, ". . . it accords with the policy of the law to look less favorably upon the more active of two innocent parties when by reason of such activity a loss is sustained as the result of the misconduct of a stranger." *Sefton v. Sefton,* supra, 291 P.2d 439 at 442.

Finally, if the argument that a former husband is liable for his wife's support because no duty to support flows from the annulled marriage is carried to its logical conclusion, she would be entitled to alimony for the period during which she had lived with her second husband. "Such a conclusion in our opinion would be repugnant to public policy and good morals." *Keeney v. Keeney,* supra, 30 So.2d 549 at 551; *Sleicher v. Sleicher,* 251 N.Y. 366, 167 N.E. 501 (1929). Such a result was reached by the court in the instant case. Appellant's obligation to pay maintenance was reinstated for a period including the two months appellee was "married" to Pfrimmer. In Arizona, there is no statutory basis for an award of maintenance in an annulment proceeding.

While recognizing that there is a strong policy of insuring to a wife a legal right to support, these courts treat a divorcee ". . . as a responsible person who must be held to her decision, presumably relied upon by others, to terminate her right to support from a former husband." *Berkely v. Berkely,* supra, 75 Cal.Rptr. 294 at 296; *Herscher v. Herscher,* 51 Misc.2d 921, 274 N.Y.S.2d 295 (1966). A.R.S. § 25–327(B) expresses the clear intent that when support needs cease by virtue of death or remarriage, the obligation to support should also cease. Upon remarriage, the wife obtains a new source of support. However, termination of this marriage, on divorce or death of her husband, does not reinstate support from the first husband merely because support is unavailable from the second husband. There is ". . . no sound reason for treating an annulment any differently from a divorce or death in this regard." *Flaxman v. Flaxman,* supra, 273 A.2d 567 at 570; *Gaines v. Jacobsen,* supra.

■ Upon review of the decisions in this area, we find ourselves in agreement with the foregoing policy considerations against reviving a maintenance obligation. Even though equitable in nature, divorce actions in Arizona are statutory, the courts having only those powers specifically conferred by statute. *Saxon v. Riddel,* 16 Ariz. App. 325, 493 P.2d 127 (1972); *Rodieck v. Rodieck,* 9 Ariz.App. 213, 450 P.2d 725 (1969). We hold that appellant's obligation to pay spousal maintenance was terminated

under A.R.S. § 25–327(B) and therefore the court was without jurisdiction to order the obligation reinstated. Appellant's motion for summary judgment should have been granted.

Appellant also questions the trial court's order that he pay appellee's attorney's fees. A.R.S. § 25–324 authorizes a court ". . . from time to time, after considering the financial resources of both parties," to award costs, including attorney's fees. This decision lies within the sound discretion of the court. *Rowe v. Rowe,* 117 Ariz. 474, 573 P.2d 874 (filed January 5, 1978); *Burkhardt v. Burkhardt,* 109 Ariz. 419, 510 P.2d 735 (1973). Even though he prevails on appeal, appellant has failed to demonstrate an abuse of discretion. We affirm the award of attorney's fees.

We affirm the part of the judgment awarding attorney's fees to appellee and reverse as to the award of $1,540.00 for maintenance and arrearages.

RICHMOND, C. J., and HOWARD, J., concur.