206 N.J. Super. 610 (1986)
503 A.2d 377
ANGIE SITES, PETITIONER-APPELLANT,
v.
JOHNS MANVILLE PRODUCTS, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1985.
Decided January 14, 1986.
*611 Before Judges KING, SIMPSON and SCALERA.
John J. Sharkey, Jr., argued the cause for appellant (Raymond E. Wenstrom, on the brief).
Janis Turner argued the cause for respondent (Thiele & Hermes, attorneys; Richard H. Thiele, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
In this case we consider the effect of an annulment on workers' compensation dependency death benefits. We conclude that the grant of a legitimate annulment of the remarriage reinstates the entitlement of the deceased worker's widow to dependency death benefits which she had been receiving before entering into the voidable second marriage.
These are the relevant facts. The deceased, Charles Sites, worked for Johns-Manville when he died from a compensable accident on April 16, 1973. On January 18, 1979 the judge of compensation awarded his widow, Angie Sites, dependency death benefits under our workers' compensation statute. See N.J.S.A. 34:15-13(a). The award was 50% of her deceased husband's wages of $180 a week, or $90 a week for 450 weeks, a sum of $40,500. After that period, compensation would be paid pursuant to N.J.S.A. 34:15-13(j) which requires downward adjustment if the surviving spouse has earnings from employment.
On July 1, 1978, about six months before the entry of the workers' compensation judgment for dependency benefits, the appellant, Angie Sites, remarried. After the judgment was entered her deceased husband's employer paid the accrued benefits to the date of remarriage only.
*612 On May 6, 1982 Judge Gaynor, sitting in the Chancery Division of this court, entered a judgment annulling Angie Sites remarriage. The ground for annulment of the unconsumated marriage was fraud  the appellant's new husband "was physically and incurably impotent, therefore precluding sexual intercourse." This condition had never been disclosed before the marriage. The judgment of annulment also recited that "as a result of an agreement between the parties that the defendant pay the plaintiff [Angie Sites] $8,000 forthwith in full and final satisfaction of any and all claims past, present, and future, including any claim to alimony which may have arisen as a result of the ceremony of marriage."
On April 14, 1983 the appellant Angie Sites filed a notice of motion in the Division to restore payment of the dependency benefits as of July 1, 1978, the date payments had stopped because of the remarriage. The judge of compensation denied restoration of dependency benefits, relying on Flaxman v. Flaxman, 57 N.J. 458 (1971).
In Flaxman the Supreme Court held that the right of a divorced wife to alimony from her former husband under a separation agreement incorporated into the divorce decree was not revived by annulment of her second marriage on grounds which rendered it voidable. Id. at 463. As in the case before us, the facts in Flaxman were undisputed. The parties entered into a separation agreement which provided that the wife would retain custody of the two children and that the husband would pay both child support and alimony. Under the agreement, alimony was to terminate if the wife divorced her husband and remarried. Plaintiff wife sued for divorce and obtained a final judgment which incorporated the separation agreement. Two months later plaintiff remarried; a year later this remarriage was annulled. The annulment was based on the second husband's fraud because he never intended to have children or consummate the marriage.
*613 In denying the reinstatement of alimony the Court's primary concern was that if it held otherwise, "a husband, whose divorced wife had remarried, could never be certain that the financial responsibility for his former wife would not shift back to him." Id. at 463. The Court held that a husband may rely upon his former wife's remarriage safely assuming that his financial obligations to her were ended and proceed to reorder his financial affairs. In a companion case decided the same day, the Court underscored a concern expressed in Flaxman that allowing an annulment to revive alimony payments would sometimes allow a wife to choose between sources of support. Sharpe v. Sharpe, 57 N.J. 468 (1971). In Sharpe, as in Flaxman, the second marriage was voidable and not void. The plaintiff wife had grounds for either divorce or annulment. Choosing a divorce would have allowed her to look to her second husband for alimony and, under the result which she urged, an annulment would have revived the alimony due from her first husband. "[I]n justice to her former husband, who has had no say in that choice," the Court declined to allow her this option. 57 N.J. at 471.
Appellant Angie Sites asserts that there is absolutely "no case law in this jurisdiction dealing with this Workers' Compensation issue." Urging that the context within which these cases arise is crucial to their resolution, she turns to other jurisdictions which have decided this issue in the context of both dependency benefits from workers' compensation and alimony. Plaintiff discusses at length two Arizona cases, Means v. Industrial Commission, 110 Ariz. 72, 515 P.2d 29 (1973), and Hodges v. Hodges, 118 Ariz. 572, 578 P.2d 1001 (Ariz. App. 1978). In Means the Supreme Court of Arizona reversed an intermediate appellate court and reinstated a widow's award of workers' compensation benefits which had terminated upon her remarriage and which the Arizona Industrial Commission declined to revive after that marriage was annulled. The Arizona Supreme Court reached this result despite the fact that plaintiff could have sought a divorce instead of an annulment of her *614 second marriage. In Hodges the Arizona Court of Appeals considered the question presented in Flaxman  whether an annulment of a subsequent marriage revives the first husband's obligation to pay alimony. The Arizona intermediate appellate court quoted extensively from the Flaxman opinion. The court found that "[t]here is a manifest difference between a spousal maintenance paying former husband and the Industrial Commission administering workmen's compensation law." 578 P.2d 1001, 1004 (1978). Juxtaposing the liberal construction accorded workers' compensation statutes in order to effect "their purpose of placing the burden of death and injury upon industry," and the equitable considerations that are paramount in ascertaining an award of spousal maintenance, the court decided against reviving the maintenance obligation.
Our own cases distinguish between issues arising under the law of workers' compensation and those arising in the family law field. In Dawson v. Hatfield Wire & Cable Co., 59 N.J. 190 (1971), our Supreme Court said that
[t]he test of the relationship of husband and wife should not be quite the same in the context of this type of law, [workers' compensation] designed to supply a social need and to remedy a social evil, as in the area of familial law where questions of property, inheritance, legitimacy of offspring and the like rightly demand a more rigid adherence to conventional doctrine. [Id. at 197].
But plaintiff is essentially correct in asserting that there is no New Jersey case on point in the workers' compensation area. There are some reported cases dealing with closely related issues.
In Stellmah v. Hunterdon Coop. G.L.F. Serv., Inc., 47 N.J. 163 (1966), the Supreme Court, noting the liberal interpretation to be given to provisions of the workers' compensation statute defining dependents to whom death benefits are to be distributed, held that a child need not be adopted in accordance with provisions of our adoption law in order to be "legally adopted" within the meaning of the Workers' Compensation Act. In Dawson v. Hatfield Wire & Cable Co., 59 N.J. 190 (1971), the Supreme Court held that the petitioner qualified as a "wife" under the workers' compensation statute over the employer's *615 objection that decedent had never divorced his first wife and that his subsequent "marriage" to petitioner was bigamous and invalid. The Court stated that there had been
entire good faith on the part of petitioner, a de facto relationship of man and wife continuing unbroken over an extended period of years having had its genesis in a ceremonial marriage, economic dependence on the part of petitioner and the total absence of any other claim against respondent. Where such facts coalesce, we think that the petitioner qualifies as a "wife" under the statute. [Id. at 196].
In Leitenberger v. Olt Brothers, Inc., 136 N.J. Super. 261 (App.Div. 1975), aff'd 71 N.J. 370 (1976), the question was whether a widow could be deprived of dependency benefits because, since her husband's death, she had held herself out as the wife of another man, although she had not married him. This court stated that the issue had been decided in Gaudreau v. Eclipse Pioneer Division, Bendix Air Corp., 137 N.J.L. 666 (E. & A. 1948), which held that only a valid ceremonial remarriage of a widow terminates her right to workers' compensation benefits, since common-law marriages have not been recognized in this State since 1939.
The common theme in these cases is the liberal construction accorded the workers' compensation statute in order to give effect to remedial social policy objectives. This principle was recently reiterated by our court in New Jersey Property-Liability Ins. Guar. v. State, 195 N.J. Super. 4, 10-11 (App.Div.), certif. den. 99 N.J. 188 (1984), noting that a broader test of "employee" obtains in the context of workers' compensation in order to give effect to the Act's beneficent purposes.
Plaintiff also finds support for her position in § 64.43 of 2 Larson, Workmen's Compensation. Dean Larson has written that
[w]hen a widow remarries, and the marriage is later annulled, two questions can arise. It could first be argued that, in a literal sense, she has in fact "remarried" under the statute, even if the marriage was annulled, and that therefore she lost her rights to dependency benefits once and for all, and must be content with her lump sum. This argument has not, however, been accepted by the courts; the widow has been allowed to resume receipt of dependency benefits, with credit, of course, for the lump sum.
*616 As noted in Flaxman, 57 N.J. at 466, the federal cases in the area of social security are in accord. 85 A.L.R.2d Annot. "Effect of divorce, remarriage, or annulment, on widow's pension or bonus rights or social security benefits." In a situation such as the one at hand, "it has generally been held that the pension rights held by [the surviving spouse] prior to the remarriage should be restored for the reasons that an annulment ordinarily renders the marriage void ab initio." Id. at 249.
The Flaxman Court specifically noted the "vast difference between alimony payments by a divorced husband and Social Security benefits by the federal government." 57 N.J. at 466. The Court there appeared particularly concerned with the injustice worked on a former husband if alimony were reinstated. Defendant argues that the "sensible holding" is the one rendered in the Division of Workers' Compensation, that compensation benefits are terminated irrevocably by "remarriage." We conclude that such a result is against the spirit of our case law. The workers' compensation act must be liberally construed and we must be "always conscious of the beneficent purposes of this important social legislation." Panzino v. Continental Can Company, 71 N.J. 298, 303 (1976).
In conclusion, we hold that the payment of dependency benefits should recommence as of the date of the judgment of annulment. We think equitable principles are best served by this result. During the period of the annulled marriage appellant was presumptively entitled to support from her second husband. Indeed, payment of the $8,000 sum, as recited in the property settlement agreement, reflected in part that very obligation. See Clark v. Los Angeles, 187 Cal. App.2d 792, 9 Cal. Rptr. 913 (1960); People ex rel. Byrnes v. Retirement Board, 272 Ill. App. 59 (1933), cited at 85 A.L.R.2d at 249. In other situations the equities could differ, i.e., the dependent spouse actually received no support during the term of the annulled marriage, or conversely, came away from that marriage *617 with a generous settlement. The equities of those situations can be litigated and decided when and if they ever arise.
Reversed and remanded for entry of judgment in favor of petitioner.