747 P.2d 609

**Beverly Ann SMITH and Edward Gant, Petitioners,**

v.

**Honorable Richard K. MANGUM, Superior Court of the State of Arizona, in and for the County of Coconino, Respondent Judge,**

**David Dewitt SMITH, Real Party in Interest.**

**No. 1 CA–SA 203.**

Court of Appeals of Arizona, Division 1, Department C.

Oct. 6, 1987.

Review Denied Jan. 19, 1988.

Patrice M. Horstman, Flagstaff, for petitioner Smith.

Robert B. Van Wyck, Flagstaff, for petitioner Gant.

Susan Slasor, Flagstaff, for amicus curiae The American Civil Liberties Union.

Aspey, Watkins & Diesel by Frederick M. Aspey, Flagstaff, for real party in interest Smith.

## OPINION

HAIRE, Chief Judge.

Beverly Smith (Mrs. Smith) and Edward Gant filed this special action seeking relief from a trial court order that compelled them to disclose whether they have had sexual relations. The inquiry arose during discovery in an action that Dr. David Smith (Dr. Smith) filed seeking modification of his spousal maintenance obligation to his ex-wife, Mrs. Smith. This opinion follows our order of July 15, 1987, in which we accepted jurisdiction in this special action proceeding and granted the relief requested by Mrs. Smith and Mr. Gant.

The marriage of Dr. Smith and Mrs. Smith was dissolved in 1975. The decree of dissolution presently requires Dr. Smith to pay Mrs. Smith $500 per month in spousal maintenance "until her demise or remarriage."

In 1986, Dr. Smith filed a petition to modify the spousal maintenance award. He alleged that Mrs. Smith "has become gainfully employed in the real estate business and has, upon information and belief, income substantially in excess of her needs." Accordingly, he alleged that "it would be fair, just and equitable ... to terminate the spousal maintenance payments."

During discovery, Dr. Smith sought information that would tend to indicate that Mrs. Smith and Gant have a personal relationship that is substantially equivalent to a marriage. Mrs. Smith and Gant both provided extensive personal and financial information. The information indicated that they have never lived together or discussed marriage and that they do not commingle their personal finances. The record discloses, however, that they are business associates and have used a joint business account to pay various personal expenses including professional dues, charitable donations, magazine subscriptions, hobby expenses, a down payment on a car, candy, and flowers. Mrs. Smith and Gant have attended various social functions together and have taken business trips and a vacation together.

During his deposition, Gant answered all questions and supplied all records regarding both his personal and business financial affairs. Gant refused to answer specific questions concerning whether a sexual relationship existed between him and Mrs. Smith, arguing that his private life was irrelevant to the proceeding and that the questions violated his right of privacy.

During her deposition, Mrs. Smith also refused to answer questions regarding the alleged sexual relationship. She claimed that the questions were irrelevant in proceedings relating to a request for modification of spousal maintenance provisions of a decree and also that the inquiry violated her constitutional rights to due process, privacy, and freedom of association.

Dr. Smith filed a motion to compel Gant to answer the questions regarding his alleged sexual relationship with Mrs. Smith, and the trial court granted the motion. Subsequently, Gant filed a motion for protective order.

Dr. Smith then filed a motion to compel Mrs. Smith to answer questions regarding her alleged sexual relationship with Gant. He also filed a motion for an order holding Gant in contempt of court for failing to appear at his scheduled deposition.

The trial court denied both Gant's motion for a protective order and Dr. Smith's motion to hold Gant in contempt. The court also granted Dr. Smith's motion to compel Mrs. Smith to testify.

Mrs. Smith and Gant both filed motions for reconsideration, and Mrs. Smith sought

a stay of the order. The trial court denied the motions. At subsequent depositions, Mrs. Smith and Gant answered all questions except those regarding any sexual or romantic relationship with each other. They then filed a special action petition in this court. As indicated above, after hearing oral argument we issued an order accepting jurisdiction and granting relief, and indicated that this opinion would follow.

A.R.S. § 25–327(B) provides:

"B. Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

The decree entered in the Smith dissolution proceedings conformed to this statutory provision and awarded Mrs. Smith spousal maintenance "until her demise or remarriage."

The parties recognize that Mrs. Smith is neither dead nor has she remarried. Doctor Smith argues, however, that Mrs. Smith's spousal maintenance should be terminated if it can be shown that her relationship with Mr. Gant constitutes a *"de facto"* marriage, even though no legal remarriage has occurred.[1] From this premise he argues that questions pertaining to a sexual relationship between Mrs. Smith and Mr. Gant would be relevant to show the existence of a *de facto* marriage. The respondent judge agreed with this analysis, stating: "[I]f it looks like a marriage and acts like a marriage, it should be treated like a marriage."

We do not find this reasoning persuasive. In our opinion the statutory and decree provisions requiring the termination of spousal maintenance upon remarriage do not become effective unless the receiving spouse legally remarries. Sound policy

reasons that support the elimination of spousal maintenance upon remarriage do not apply in a *de facto* marriage or cohabitation relationship.[2] Unlike in remarriage, in the absence of an express or implied agreement, no quasi-marital property rights accrue as a result of cohabitation. Similarly, there is no legal support obligation imposed on the other party during the relationship, and no spousal maintenance can be awarded when and if the relationship ends. *Cook v. Cook,* 142 Ariz. 573, 577–80, 691 P.2d 664, 668–71 (1984). Thus, in a cohabitation or *de facto* marriage relationship, the property and legal support rights of the receiving spouse may be substantially less than they would have been if there had been an actual remarriage.

When no statute controls the situation, courts in other jurisdictions have developed two theories regarding how cohabitation should affect spousal maintenance. Under the majority view, courts modify the amount of spousal maintenance received by the cohabiting ex-spouse only if the spouse's support needs have changed. *See, e.g., Kersten v. Kersten,* 141 Mich.App. 182, 366 N.W.2d 92 (1985); *In re Marriage of Gonzales,* 172 Cal.Rptr. 179, 116 Cal. App.3d 556 (1981) (superseded by statute; see *infra* p. 451, 747 P.2d p. 612). Under the minority view, some courts treat cohabitation as if it were a legal remarriage and hold that cohabitation terminates the obligation to pay maintenance, at least as long as the cohabitation continues. *See, e.g., Taake v. Taake,* 70 Wis.2d 115, 233 N.W.2d 449 (1975); *Rubisoff v. Rubisoff,* 242 Miss. 225, 133 So.2d 534 (1961). We adopt the majority view and refuse to equate cohabitation with a legal remarriage.

Citing *Hodges v. Hodges,* 118 Ariz. 572, 578 P.2d 1001 (App.1978), Dr. Smith urges

---

**1.** Arizona does not recognize a common law marriage unless it was entered into in a state that authorizes common law marriages. *See* A.R.S. §§ 25–111 and 25–112(A).

**2.** In this opinion we use the terms "cohabitation" and *"de facto* marriage" to describe a situation in which the spouse receiving spousal maintenance is living with and engaging in a sexual relationship with another person, under

circumstances not involving a legal marriage relationship. We note that neither the courts nor the commentators have produced a workable definition of a *de facto* marriage. *See* Oldham, *The Effect of Unmarried Cohabitation by a Former Spouse Upon His or Her Right to Continue to Receive Alimony,* 17 J.Fam.L. 249, 261–63 (1978–79).

that if an annulled remarriage constitutes a remarriage for purposes of terminating a prior spousal maintenance award, then a *"de facto"* status should justify termination. Although it is difficult to pinpoint the ultimate rationale of the court in *Hodges*, the court emphasized that the paying spouse should be entitled to rely on the receiving spouse's apparent marital status "after a new marriage ceremony" and thereafter to reorder his personal and financial affairs without being perpetually subject to the possibility of the revival or reinstatement of his prior spousal maintenance obligations. 118 Ariz. at 576, 578 P.2d at 1005. Here there has been no "new marriage ceremony," nor any conduct by Mrs. Smith and Mr. Gant that could cause Dr. Smith to justifiably believe that a remarriage had occurred so as to terminate his spousal maintenance obligations. We do not find the analysis in *Hodges* pertinent to the disposition of the question presented in this special action proceeding.

While cohabitation by the receiving spouse may often lead to a sense of moral outrage on the part of the paying spouse, we can see no relevance under the present statutory scheme for evidence concerning the sexual conduct of the receiving spouse.[3] Under A.R.S. § 25–319, the initial award of spousal maintenance is to be determined "without regard to marital misconduct." The modification of spousal maintenance is authorized "only upon a showing of changed circumstances which are substantial and continuing." A.R.S. § 25–327(A). A reference to "changed circumstances" required by § 25–327(A) for modification of spousal maintenance is clearly a reference to the economic circumstances that justified the original award, as set forth in § 25–319. *See Scott v. Scott*, 121 Ariz. 492, 591 P.2d 980 (1979). Under these statutes, the sexual conduct of the receiving spouse is simply not relevant. On the other hand, as petitioners admit, all evidence relating to the economic nature of the relationship between Mrs. Smith and Mr. Gant would be relevant and admissible to show that Mrs. Smith's support needs have changed. The focal point in a situation of this nature is the recipient's need for support. *See Brister v. Brister*, 92 N.M. 711, 715, 594 P.2d 1167, 1171 (1979).

We recognize that our decision may be perceived as leading to inequitable results in some instances. *See* Oldham, *Cohabitation by an Alimony Recipient Revisited*, 20 J.Fam.L. 615, 617 (1981–82); Blumberg, *Cohabiting Without Marriage: A Different Perspective*, 28 UCLA L.Rev. 1125, 1149–51 (1981). The Arizona statutes are clear, however, and any changes in such declared policy must originate in the legislature. A number of states—most notably California, Illinois, and New York—have enacted statutes that specifically deal with this problem. *See, e.g.*, Cal.Civ.Code § 4801.5 (West Supp.1987); Ill.Ann.Stat. ch. 40, ¶ 510(b) (Smith-Hurd Cum.Supp. 1987); New York Dom.Rel.Law § 248 (McKinney 1986). If changes in Arizona law are desirable, they should be left to legislative action and not to the courts.

Because we have held that the questions pertaining to any alleged sexual relationship between Mrs. Smith and Mr. Gant were not relevant and therefore the information was not discoverable, we need not reach the right of privacy and other constitutional issues raised by petitioners.

Pursuant to A.R.S. § 25–324, we grant petitioners' request for attorney's fees, in an amount to be determined pursuant to Rule 21(c), Arizona Rules of Civil Appellate Procedure.

The relief previously granted in our order of July 15, 1987, is confirmed.

CORCORAN, Acting P.J., and CONTRERAS, J., concur.

---

**3.** We recognize that Rule 26, Arizona Rules of Civil Procedure, allows discovery of not only relevant information, but also information "reasonably calculated to lead to the discovery of admissible evidence." There has been no suggestion in this proceeding that the questions relating to a sexual relationship between Mrs. Smith and Mr. Gant were in any way calculated to lead to the discovery of other evidence that would be admissible.