Ronald **MUSGROVE**, Appellant,

v.

Loita **MUSGROVE**, Appellee.

No. S–3968.

Supreme Court of Alaska.

Dec. 6, 1991.

Lawrence H. Crosby, Minneapolis, Minn., and Charles E. Tulin, Anchorage, for appellant.

Lawrence A. Pederson, Paul J. Nangle & Associates, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

### FACTS AND PROCEEDINGS

Loita and Ron Musgrove were married in 1981 and had two children. In November

of 1986, they petitioned for dissolution of their marriage and a dissolution decree was thereafter entered.

Under the terms of the dissolution, Loita received custody of the parties' children, and Ron was required to pay child support of $1,000 per month. Ron also agreed to pay Loita $1500 per month in spousal support until "1–1–92 or until the recipient dies or remarries or until wife ceases to be a full time student during the school year (roughly Sept. through June)." [1]

In August of 1989, Loita filed a motion in superior court to reduce to judgment an alleged $7,325.80 arrearage in child and spousal support. Loita is a full time nursing student, who is scheduled to graduate with a B.S.N. in nursing from Eastern Washington University in December 1991. She stated that "I have not remarried, although I am residing with David Blake and have been for several years." Additionally, Loita attached a letter from Ron, written June 22, 1989, in which he stated that he would continue to make timely child support payments, but would no longer pay spousal support. In his letter, Ron cited his recent visitation trip in which he learned "that you are, for all practical purposes, married."

In his opposition memorandum, Ron asked that Loita's motion be rejected on "legal, equitable, social, and moral grounds." At a subsequent hearing before a superior court master, Ron requested the master to find "that the modification of the spousal support on ground of—grounds of cohabitation is here and existent."

In his decision the master found that there was no elaboration of the meaning of the term "until married" in the dissolution agreement other than a statement in Ron's affidavit that it was the intent of the parties that the term include cohabitation. He further found that while "Ms. Musgrove and Mr. Blake live with the Musgrove children as a family unit," Ron's claim that " 'neighbors consider them married' is not substantiated by independent evidence." The master rejected any finding of *de facto* marriage, and refused to terminate spousal support on those grounds. The master also found no evidence of the contracting parties' intent to provide other grounds for terminating spousal support beyond those enumerated in the dissolution agreement.

The master concluded, however, that Loita's cohabitation with David was an unanticipated change in circumstances. The master noted that Loita's income had increased due to educational loans, which were anticipated by the parties, and due to the contribution David made to the household, which was unanticipated. After analyzing the financial data that Loita and David submitted, the master concluded that, notwithstanding David's support contribution, Loita still experienced a deficit in her legitimate child care and educational expenses. He, therefore, concluded that

> Mr. Musgrove's spousal support is necessary for her to meet her financial obligations, and just the fact that support now results in $829 total income [per month] greater than her expenses ... is not good cause to eliminate it entirely. It would be fairer to reduce the spousal support to $1,000 per month, as that would still allow Ms. Musgrove to comfortably meet hers and the children's needs. [2]

The superior court ruled on the objections which had been filed to the master's report. The court characterized Loita's spousal support as "rehabilitative" noting that the ordered support met all the conditions for rehabilitative alimony. The court found that none of these conditions were changed by her cohabitation and that none of the conditions precedent for a discontinuance of spousal support had occurred. The court declined to address the moral

---

1. The dissolution petition is completed in ink by hand, apparently by the parties themselves. The form provides a preprinted space for spousal support with the preprinted limitation that support ends when the recipient dies or remarries. The proviso relating to Loita's student status was added by hand.

2. The master found that Loita received $908.33 in educational loans and that David contributed $101.60 per month toward Loita's household expenses.

issues, and concluded that, while Loita may have reduced some of her expenses by living with David, her living arrangement had the same economic effect as if Loita had chosen to live with a female roommate. The superior court ordered that judgment be entered for the full amount of the claimed arrearages. This appeal followed.[3]

## DISCUSSION

Ron raises four issues on appeal. However, he has abandoned his first claim, relating to *de facto* marriage, by failing to designate error. *Patricia R. v. Sullivan,* 631 P.2d 91 (Alaska 1981).[4] In Ron's second point on appeal, he asks this court to adopt a rule that cohabitation "creates a rebuttable presumption against continuing rights to alimony." Ron's third claim is that Loita's cohabitation, in and of itself, is a material and substantial change in circumstance which warrants a modification of spousal support. Ron's fourth claim is that Loita's cohabitation has created legal rights for her in the state of Washington, or possibly even in Alaska, which would suffice to end Ron's legal obligation of

spousal support. We find none of Ron's points on appeal persuasive.

### Rehabilitative Alimony and a Material and Substantial Change of Circumstances

Distinctions which have been recognized between the nature of permanent alimony and rehabilitative alimony are determinative of the issues in this appeal.

In *Voyles v. Voyles,* we held that remarriage automatically terminates permanent spousal support, in the absence of an agreement to the contrary. 644 P.2d 847, 849 (Alaska 1982).[5] In this regard we stated "remarriage should serve as an election between the support provided by the alimony award and the legal obligation of support embodied in the new marital relationship." *Id.* In contrast, an award of rehabilitative alimony does not create a continuing legal obligation to provide for the reasonable needs of a former dependent spouse. Rehabilitative alimony is awarded for a short duration and a specific purpose "limited to job training or other means directly related to entry or advancement within the work force."[6] *Richmond*

---

3. The parties agree that in reviewing the legal issues presented this court should use its independent judgment in review. *Brooks v. Brooks,* 733 P.2d 1044, 1055 (Alaska 1987). In doing so, we adopt the law that is "most persuasive in terms of precedent, reason, and policy." *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

4. At no point does Ron allege error in the master's findings. While the master did apply California law to find that no *de facto* marriage existed, Ron admits that the law of Washington state, where the supposed *de facto* marriage took place is similar. Neither state recognizes common law marriage. Therefore, the master would have reached the same result under Washington law.

5. AS 25.24.170 provides that "any time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony ... or for the maintenance of either party to the action." This court has held that "to modify a support decree pursuant to a material and substantial change in circumstances is generally required." *Larson v. Larson,* 661 P.2d 626, 628 (Alaska 1983) (citing *Curley v. Curley,* 588 P.2d 289, 291–92 (Alaska 1979)). The trial court's determination of what constitutes a material and substantial change is guided by the special agreements of the parties and the nature of the

spousal support awarded. *E.g. Estate of Kuhns v. Kuhns,* 550 P.2d 816, 817–18 (Alaska 1976) (obligation of support ceases at death, absent agreement to the contrary); *Larson v. Larson,* 661 P.2d 626, 630 (Compton, J., concurring) (rehabilitative alimony is not modifiable).

6. The importance of providing dependent spouses with adequate job skills cannot be over-estimated. Currently, "households headed by divorced and separated mothers constitute the fastest growing segment of the American poor." Singer, *Divorce Reform and Gender Justice,* 67 N.C.L.Rev. 1103 (1989). In Alaska, "divorced women and their children experienced a 33% decline in per capita income resulting in a radical downward shift of their standard of living...." Alaska Women's Commission, *Family Equity At Issue. A Study Of Economic Consequences of Divorce on Women and Children,* (October 1987).

It has been explained that *"Enhancing earning capacity* of the economically dependent spouse is the purpose of true rehabilitative alimony." Krauskopf, *Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony,* 21 Fam. L.Q. 573, 581 (1987–88). *See also* Ford, *Rehabilitative Alimony—A Matter of Discretion or Direction?,* 12 Fla.St.U.L.Rev. 285, 290 (1984) ("the purpose of rehabilitative alimony is to establish a capacity for self-support and ... the purpose

v. *Richmond,* 779 P.2d 1211, 1215 (Alaska 1989). This distinction and its implications have often been recognized by this court. *See Bussell v. Bussell,* 623 P.2d 1221, 1224 (Alaska 1981); *Larson v. Larson,* 661 P.2d 626, 632 n. 4 (Alaska 1983) (Rabinowitz, J., dissenting) ("Rehabilitative alimony in contradistinction to permanent alimony, is an award of spousal support of limited duration and for a specific purpose."); *Richmond,* 779 P.2d at 1215 (Although alimony is generally not "just and necessary" when a property division can adequately provide for the "reasonable needs of the spouse seeking alimony," rehabilitative alimony can be awarded for a specific purpose and a short duration even with an adequate property division if it is "limited to job training or other means directly related to entry or advancement within the work force."); *Schanck v. Schanck,* 717 P.2d 1, ·5 (Alaska 1986); *Carlson v. Carlson,* 722 P.2d 222, 224 (Alaska 1986); *Bays v. Bays,* 807 P.2d 482 (Alaska 1991).

◼ Rehabilitative alimony is modifiable only when there is a material and substantial change in circumstances related to its purpose. In the absence of a special agreement, we agree that

[i]f a recipient of equitable rehabilitative support achieves rehabilitation or stops trying to obtain education or training to improve her employment skills and earning capacity, that changed circumstance justifies termination of maintenance.... [H]owever, achievement or cessation of rehabilitative efforts cannot be presumed by the fact of remarriage.

O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225, 259–60 (1985). Neither intimate personal relationships between the dependent former spouse and a third party or reasonable efforts by the dependent former spouse to reduce expenses constitute a material and substantial change in circumstances.[7]

◼ Thus, based on our review of the record, we hold that the superior court did not err in finding that no material and substantial change of circumstances occurred. Loita is a full time nursing student, who will graduate with a B.S.N. in nursing from Eastern Washington University in December 1991. Ron has not alleged or proven that Loita completed or ceased her rehabilitative efforts. Without such a finding or a special agreement, Ron's efforts to terminate rehabilitative spousal support were correctly denied.[8]

of permanent alimony is to sustain those who lack a capacity for self-support....").

7. We have expressed a strong policy "to disentangle fully interspousal affairs upon dissolution." *Voyles v. Voyles,* 644 P.2d 847, 849 (Alaska 1982).

While cohabitation by the receiving spouse may often lead to a sense of moral outrage on the part of the paying spouse, we can see no relevance under the present statutory scheme for evidence concerning the sexual conduct of the receiving spouse.... The modification of spousal maintenance is authorized 'only upon a showing of changed circumstances which are *substantial and continuing.*' A.R.S. § 25–327(A). A reference to 'changed circumstances' ... is clearly a reference to the economic circumstances that justified the original award ... [T]he sexual conduct of the receiving spouse is simply not relevant.

*Smith v. Mangum,* 155 Ariz. 448, 747 P.2d 609, 612 (App.1987). We note that Arizona law on alimony is very similar to Alaska law. In Arizona, an award of spousal support may be modified only upon a showing of "changed circumstances which are substantial and continuing." *Id.* 747 P.2d at 612 (quoting A.R.S. § 25–327(A)) Additionally, permanent spousal support in Ari-

zona terminates automatically upon remarriage, *id.* at 611 (quoting A.R.S. § 25–327(B)), and Arizona does not recognize common law marriage. *Id.* at 611 n. 1.

8. Alternatively, we conclude Ron has not established *facts or law to support the proposition that David has acquired a legal obligation to support Loita.* Even if we failed to recognize the distinction between permanent spousal support and rehabilitative alimony, Ron has failed to prove that Loita has gained a continuing legal obligation of support constituting a material and substantial change of circumstances. Ron argues that "[t]he decisional law of Washington State ... makes use of quasi-marriage or de facto marriage in order to ... establish benefits and to settle claims to property...." However, Ron never asserts that David has a legal obligation to support Loita or cites any persuasive precedent. Loita correctly asserts that Washington law only creates "[r]ights to jointly acquired property [which] is not the same as a legal right to support, which is the issue in the instant case." *See Warden v. Warden,* 36 Wash. App. 693, 676 P.2d 1037 (1984) (holding only that the statutory criteria for property division upon divorce apply to nonmarital relationships of long duration).

■ There was no special agreement terminating rehabilitative alimony upon "cohabitation" or "de facto marriage." Ron specifically agreed to pay alimony to Loita of $1500 per month in spousal support until "1–1–92 or until the recipient dies or remarries or until wife ceases to be a full time student during the school year (roughly Sept. through June)." Ron's claim that the term "marriage" encompassed "cohabitation" or "de facto" marriage was based solely on his statements. Despite Ron's assertions, the master did not find any evidence of the contracting parties' intent to provide other grounds for terminating spousal support beyond those specifically enumerated in the dissolution agreement. Based upon our review of the record, the master's finding with regard to the intent of the parties in the dissolution agreement was not clearly erroneous. Thus, the superior court did not err in concluding that there was no "legal basis for the failure to pay."

AFFIRMED.

Ron also invites this court to reinstate common law marriage or find a right to "palimony" which might serve as grounds for extinguishing his obligation to pay rehabilitative spousal support. This is not the correct case to address this question, because the two concerned parties do not live in this state.

