# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1341

Margaret A. Hopkins, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

On appeal from the Board of Veterans' Appeals

(Decided     May 4, 2005     )

*Theodore C. Jarvi*, of Tempe, Arizona, was on brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Catherine A. Chase*, Deputy Assistant Counsel; and *Gary E. O'Connor*, all of Washington, D.C., were on the brief for the appellee.

Before IVERS, *Chief Judge*, and STEINBERG and KASOLD, *Judges*.

KASOLD, *Judge*: This is an appeal through counsel of a June 10, 2003, decision of the Board of Veterans' Appeals (Board) that determined that clear and unmistakable error (CUE) did not exist in an earlier Board decision that had denied the appellant dependency and indemnity compensation (DIC) benefits after finding that she could not be recognized for VA-benefits purposes as the widow of veteran Charles Hopkins. Record (R.) at 1-9. This finding was rendered in an October 1979 Board-remand decision (R. at. 299-308) that was finalized on June 10, 1980 ("earlier Board"). R. at 9. The appellant argues, inter alia, that the 2003 Board committed error when it failed to find that the earlier Board had applied the law of the wrong state in determining the validity of her marriage to the veteran. Appellant's Brief (Br.) at 6-7. The Secretary argues that the earlier Board decision was based upon the correct law and that the

2003 Board decision was not arbitrary and capricious. Secretary's Br. at 9. For the reasons set forth below, the 2003 Board decision will be affirmed.

## I. BACKGROUND

The appellant married James Gray in Greely, Colorado, in May 1937. R. at 91. They had one child together. R. at 94. On December 23, 1942, the appellant participated in a marriage ceremony with the veteran, Lieutenant Charles Hopkins, in Alamogordo, New Mexico. R. at 28-29. At the time of this second ceremonial marriage, her first marriage had not been terminated. R. at 112. On November 30, 1943, the appellant and the veteran had a child. R. at 30. On January 20, 1944, Lieutenant Hopkins was reported missing in action, and on January 24, 1946, he was presumed dead by the Secretary of War. R. at 25.

In August 1948, the appellant filed an application for VA "Pension or Compensation by Widow and/or Child of Deceased Person." R. at 33-36. In that application, she indicated that her only marriage had been to Lieutenant Hopkins. R. at 34. In response to her application, a VA regional office (RO) requested clarification from her as to why her surname on her child's birth certificate was "Hopkins" and the surname on her marriage certificate was "Gray." R. at 38. The appellant replied that "[u]pon the birth of a son to a common-law husband, I adopted the name of the father without being married to him for the sake of the child." R. at 41. Upon further investigation, the RO determined that the appellant had been married to Mr. Gray in a legal ceremony and that her ceremonial marriage to Lieutenant Hopkins was therefore void. R. at 112. The RO denied the appellant's claim, and she did not appeal.

In November 1949, the appellant filed with the Arizona Superior Court of Pima County a complaint for annulment of her marriage to Mr. Gray on the ground that the marriage contract was induced by fraud on the part of Mr. Gray. R. at 217-18. On April 22, 1950, after finding that the defendant had admitted all allegations in the complaint (R. at 116), that court issued a decree of annulment declaring that marriage "wholly null and void, ab initio and of no force and effect." R. at 116.

In October 1957, the appellant submitted a new claim for DIC. R. at 124-27. The RO determined that she could not be recognized as the widow of Lieutenant Hopkins because, inter

alia, of the following: "When claimant married the veteran she was the wife of James C. Gray. It was a bigamous marriage and void. The suit for annulment was instituted after the death of the veteran. The decree entered therein could not have the effect of making the claimant's marriage to the veteran valid." R. at 139. The RO's determination was upheld in a July 1958 Board decision. R. at 146.

In June 1977, the appellant filed another claim for DIC. R. at 156-59. The RO denied that claim, after noting that the 1957 claim could be reopened only on the basis of new and material evidence. R. at 174. The appellant, through her son, stated that Mr. Gray had been in a prior undissolved marriage at the time of his marriage to the appellant and that Mr. Gray had annulled his marriage to the appellant prior to the date of the appellant's ceremonial marriage to the veteran. R. at 188. The appellant provided no evidence to support these assertions. The Secretary also was unable to locate any documents in support of them. R. at 207. As a result, the RO denied the claim.

On appeal, the Board in 1979 again determined that the appellant was not the legal widow of the veteran and denied her claim for DIC. R. at 307. The Board discussed an Arizona Court of Appeals case, *Hodges v. Hodges*, 578 P.2d 1001 (Ariz. Ct. App. 1978), regarding the relation-back theory, and determined that an annulment of an earlier marriage could not retroactively validate a subsequent otherwise void marriage. R. at 306-07. In her appeal to the Board, the appellant stated that she did not believe that there was a legal impediment to a second marriage, and the Board remanded the matter to the RO to determine whether her ceremonial marriage to the veteran could be considered a "deemed valid marriage" based upon her state of mind. R. at 283, 307. The RO found that the appellant knew or should have known that she could not marry a second time without obtaining a divorce from her first husband or an annulment of her first marriage. R. at 315-16. Accordingly, the RO determined that the appellant's second ceremonial marriage could not be considered a "deemed valid marriage". R. at 317. In June 1980, the Board agreed with the RO and denied the appellant's claim. R. at 325-29.

The appellant submitted her fourth claim for DIC in August 2001. R. At 339. The RO again denied the claim on the basis that the appellant had never been validly married to

Lieutenant Hopkins. R. at 352-53. The appellant then filed a motion for reconsideration or, in the alternative, a claim that the earlier Board decision contained CUE by applying the wrong law in concluding that her second ceremonial marriage was void. R. at 363-72. The motion for reconsideration was denied, and the 2003 Board found no CUE in the earlier decision. This appeal followed.

## II. ANALYSIS

### A. CUE Standard of Review

A claim of CUE in a prior final decision of the Board is a collateral attack on that decision. *See Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000); *see also* 38 U.S.C. §§ 7111, 5109A(a); 38 C.F.R. § 20.1403(a) (2003). To succeed, a claimant must prove (1) that the decision was flawed because either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, *and* (2) that the outcome would have been manifestly different if the error had not been made. *See Russell v. Principi*, 3 Vet.App. 310, 313 (1992) (en banc); *see also Andrews v. Principi*, 18 Vet.App. 177, 181 (2004) (noting that standard of review enunciated in *Russell*, *supra*, is applicable to CUE claims raised under 38 U.S.C. § 7111). A mere disagreement with how the facts were weighed or evaluated is not enough. *Russell*, *supra*; 38 C.F.R. § 20.1403(d)(3) (2004). Moreover, the claimant must allege and identify with some degree of specificity the alleged error and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error." *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993); *see also Bustos v. West*, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999) (adopting the "manifestly changed the outcome" language in *Russell*, *supra*); 38 C.F.R. § 20.1403(c).

In reviewing Board decisions evaluating allegations of CUE in prior final decisions, the Court "cannot conduct a plenary review of the merits of the original decision." *Andrews*, 18 Vet.App. at 181 (quoting *Archer v. Principi*, 3 Vet.App. 433, 437 (1992)). Moreover, this Court recently reiterated that the standard of review of a Board's determination on the merits of a CUE claim is whether the Board's decision is "'arbitrary, capricious, an abuse of discretion, or

4

otherwise not in accordance with law' in denying the CUE allegation." *Andrews*, 18 Vet.App. at 181 (quoting 38 U.S.C. § 7261(a)(3)(A)).

Although a Board's denial of a CUE claim will be overturned only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, the various elements that lead to a valid CUE claim are subject to review under the standard applicable to that element. For example, two circumstances relating to a CUE matter are reviewed under the de novo standard of review. *See Joyce v. Nicholson*, __ Vet.App. __, __, No. 03-59, 2005 WL 646165, at *7 (Mar. 22, 2005). "The first is . . . whether the appellant, as a matter of law, has presented a valid CUE allegation . . . ." *Andrews*, 18 Vet.App. at 182. The second is whether applicable law or regulation was applied or was correctly applied. *See Joyce* and *Andrews*, both *supra*.

Accordingly, in the case on appeal, although the ultimate decision of the 2003 Board – that any error or misapplication of the law in the earlier Board decision did not constitute CUE such that the outcome would have been manifestly different – is reviewed under the "arbitrary, capricious, abuse of discretion, or otherwise not in accordance with the law" standard, whether the earlier Board correctly applied the law at the time of its decision is a matter that is reviewed de novo.

## B. Effect of the Annulment

The appellant argues that the Arizona court's decree that her first marriage was "void, ab initio" meant that her first marriage never existed and therefore could not serve as a legal barrier to a second marriage and, further, she argues that the Secretary and this Court are bound by that interpretation. Although the validity of the annulment judgment is a question of state law for the appropriate state court, and not for the Secretary or this Court to decide, *see Badua v. Brow*n, 5 Vet.App. 472-74 (1993) (explaining that the Secretary determines the validity of a marriage by applying the law of the place where the marriage occurred)*; see also Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (confirming that domestic-relations exception to Federal jurisdiction excludes issuance or modification of divorce, alimony, or child-custody decree); *Sosna v. Iowa*, 419 U.S. 393, 404 (1975) (explaining that regulation of domestic relations is "an area that has long been regarded as virtually exclusive province of the States"); *Barber v. Barber*, 62 U.S.

(21 How.) 582, 584 (1859) (holding that domestic relations is an exception to Federal-court jurisdiction), the issue in this case is not the validity of the annulment, but rather the effect that the annulment had on the appellant's second ceremonial marriage and, more specifically in this case, the effect that the annulment had, if any, on the appellant's entitlement to VA survivor benefits. *See De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956) (holding that agency applies state law when determining entitlement to Federal right based upon a familial relationship). The Secretary makes this decision in the first instance subject to review by the Board and the Court. *See* 38 U.S.C. §§ 103, 511, 7104, and 7252; *see also Badua*, *supra*. Based on the analysis set forth below, the Court concludes that the annulment in this case does not relate back to make valid an otherwise invalid marriage.

### C. Void or Voidable

It is generally the law that a void marriage is one that never had any validity, while a voidable marriage is one that had validity until such time as it was voided, *see* 4 AM. JUR. 2D *Annulment of Marriage* § 48 (2004), and this was the law in Colorado when the appellant entered into her first marriage, *see Williams v. Williams*, 263 P. 725, 726-27 (Colo. 1927), and the law in Arizona when she entered into her second marriage, *see S. Pac. Co. v. Indus. Comm'n*, 91 P.2d 700, 703-04 (Ariz. 1939), *overruled on other grounds by Means v. Indus. Comm'n*, 515 P.2d 29 (Ariz. 1973), as well as the law in New Mexico, where she may have been resident at the time of her second marriage, *Chavez v. Chavez*, 485 P.2d 735, 736 (N.M. 1971) (citing *Flaxman v. Flaxman*, 273 A.2d 567, 568-69 (N.J. 1971)). Thus, if the appellant's first marriage was void when performed, there would be no legal bar to her second marriage, although if her first marriage was valid when entered into and only rendered a nullity at some later point, that first marriage would have been legal and valid until the time it was declared void, and a second marriage entered into during the period of validity of the first marriage would be invalid. *See Hodges*, 578 P.2d at 1003; *In re Estate of Milliman*, 415 P.2d 877, 881 (Ariz. 1966); *S. Pac. Co.*, 91 P.2d at 703-05; *see also Prince v. Freeman*, 112 P.2d 821, 822 (N.M. 1941).

The validity of a marriage is determined according to the lex loci, the law of the state that solemnized the marriage. S*ee* 38 U.S.C. § 103(c) (for VA-benefits purposes, the validity of a marriage is determined according to the law of the place where the parties resided at the time of

the marriage); *see also* ARIZ. REV. STAT. § 25-112 (2004); *Cook v. Cook*, 104 P.3d 857, 859 (Ariz. Ct. App. 2005) (citing *Gradias v. Gradias*, 74 P.2d 53, 53 (Ariz. 1937), and *Horton v. Horton*, 198 P. 1105, 1107 (Ariz. 1921)); *Payne v. Payne*, 214 P.2d 495, 487-98 (Colo. 1950). Thus, in an action to declare a marriage decree as having no validity, a court must look to the substantive law of the state in which the marriage took place or the law of the state where the right to benefits accrued. *See Cook*, *supra*; 4 AM. JUR. 2D *Annulment of Marriage* § 2 (2004). In this case, because the appellant entered into her first marriage in Colorado, and the parties to the marriage were residents of Colorado at the time, it is Colorado law that determines the validity of the marriage. *See* ARIZ. REV. STAT. § 25-112 (1948); *see also* 38 U.S.C. § 103(c); *Gradias* and *Horton*, both *supra*.

At the time of the appellant's first marriage, Colorado prohibited only three types of marriages: Bigamous marriages, incestuous marriages, and out-of-state marriages void where performed. *See Griswold v. Griswold*, 129 P. 560, 561, 562, 565 (Colo. Ct. App. 1913) (explaining prohibition against bigamous and void out-of-state marriages and adopting 2 KENT'S COMMENTARIES 93 14th ed., indicating incestuous marriages are void); *see also* COLO. REV. STAT. § 14-10-111(1)(g) (2004) (still recognizing only three types of prohibited marriages). A marriage induced by fraud was not prohibited per se by Colorado law; rather, such a marriage was valid until and unless it was later declared void by judicial decree. COLO. REV. STAT. § 14-10-111(1)(d) (1973); *see also Coffman v. Godsoe*, 351 P.2d 808, 813 (Colo. 1960) ("[M]arriage status is voidable upon a showing that it was induced by false material representations.").

In this case, the appellant's first marriage was annulled apparently on the basis of fraud, not because the marriage was prohibited under Colorado law when entered into. R. at 225-27. Moreover, the use of the term "void, ab initio" in the appellant's Arizona annulment decree cannot be read in a vacuum to mean that the court in that case determined that the appellant's first marriage was never valid. The term "void," as used in the State of Arizona, referred to both "voidable" marriages, which are subject to ratification or disaffirmance by the injured party, as well as "void" marriages, which are incapable of ratification. ARIZ. REV. STAT. § 25-301 (1955); *see S. Pac. Co.*, 91 P.2d at 703-04; *Hodges*, *supra*. Whether the marriage was void or voidable

7

was determined in these cases by the grounds for which the appellant petitioned for annulment. *See Hodges, supra*. The facts in this case indicate that the only ground supporting the annulment was fraud, and nothing indicates that the ground for annulment involved a bigamous marriage or an incestuous marriage, or that the first marriage was otherwise void under Colorado law when performed. R. at 131-34; s*ee Griswold, supra*.

Accordingly, given the interchangeability of the terms "void" and "voidable" under Arizona law and the fact that the that there were no grounds to support a determination that the marriage performed in Colorado was void under Colorado law at the time it was performed, the Arizona Superior Court's declaration that the appellant's first marriage was "void, ab initio," could mean only that her first marriage was voidable from the beginning and, not having been ratified by the parties, was therefore declared void, ab initio. *See Hodges* and *S. Pac. Co.*, both *supra*. Since the appellant's first marriage was not invalid at the time it was entered into and remained valid until voided, her second marriage was invalid during the period of validity of the first marriage. *See Prince*, *supra*; *see also In re Estate of Milliman*, *supra*; *S. Pac. Co.*, 91 P.2d at 703-05; *Hodges*, *supra*; 52 AM. JUR. 2D *Marriage* § 57 (2004). Until the time of her annulment, the appellant was precluded by law from entering into a second marriage, and this was true throughout the United States. *See* 52 AM. JUR. 2D *Marriage* § 57; *see also* N.M. CONST. art. XXI, §1 (amended 1953) (incorporating language from the New Mexico Enabling Act); New Mexico Enabling Act, 61 Pub. L. 219, § 2, 36 Stat. 558 (1910); *Cleveland v. United States*, 329 U.S. 14, 18 (1946) (quoting *Reynolds v. United States*, 98 U.S. 145, 164 (1879)); *S. Pac. Co.* and *Prince*, both *supra*; *Williams v. Williams*, 23 N.W. 110, 115 (Wis. 1885).

### D. Relation-Back Theory

Consistent with the above discussion, the appellant actually does not argue that her ceremonial second marriage was valid at the time she entered into it. Rather, she contends that the law recognizes a relation-back effect that revives a second marriage when a first marriage has been annulled. The appellant misunderstands the relation-back theory, and her attempt to apply it to her situation has no support in the law. Under the relation-back theory, a second marriage that is valid when entered into but later is declared void may result in the revival of the

obligations attendant to an earlier marriage, dependent on the facts and equities of the situation. *See generally Sefton v. Sefton*, 291 P.2d 439, 440-42 (Cal. 1955). For example, an award of insurance benefits, associated with a first marriage and terminated upon remarriage, has been held to be reinstated upon the annulment of the second marriage and the return of the lump-sum insurance settlement. *Means*, *supra*; *see United States Fid. & Guar. Co. v. Indus. Comm'n*, 542 P.2d 825, 827 (Ariz. Ct. App. 1975). On the other hand, an award of alimony, ordered upon dissolution of a first marriage and terminated upon remarriage, may not be reinstated because public policy will seek to protect the innocent party, the alimony obligor from the first marriage, who has relied upon the validity of the second marriage. *See Hodges,* 578 P.2d at 1004-05; *Sefton*, 291 P.2d at 442-43; *Torgan v. Torgan*, 410 P.2d 167, 171 (Colo. 1966).

Had the appellant's first marriage been an invalid marriage such that it had no validity when entered into, a second marriage would be valid. *See Prince*, *supra*. That is not the case here. Rather, the appellant's second ceremonial marriage was itself invalid and, as noted, there is no authority supporting the appellant's proposition that her second ceremonial marriage achieved legal status when the first marriage, itself a valid and legal marriage, was later annulled. The cases relied upon by the appellant all involve the relation-back theory restoring benefits or obligations attendant to a valid first marriage that had been extinguished by a subsequent second marriage without regard to the second marriage's being void or voidable. *See Means*, 515 P.2d at 31; *In re Marriage of Cargill*, 843 P.2d 1335 (Colo. 1993); *see also Folsom v. Pearsall*, 245 F.2d 562, 566 (9th Cir. 1957). Although the appellant argues that the relation-back theory should make legal a marriage that was otherwise prohibited by law at the time that it was attempted to be entered into, she cites no law in support of her proposition, and the Court can find none.

### III. CONCLUSION

The Court concludes that the appellant has not demonstrated a misapplication of the law by the earlier Board or the 2003 Board. Moreover, the 2003 Board decision (that there was no CUE in the earlier Board decision) is adequately supported by the record and an adequate statement of reasons or bases, and that decision is therefore not arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law. *See* 38 U.S.C. § 7261(a)(3)(A). Accordingly, the 2003 Board decision is AFFIRMED.